E-FILED
Wednesday, 10 June, 2026 01:28:32 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

KIMBERLY S.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 1:25-cv-01326-RLH

## ORDER & OPINION

Plaintiff Kimberly S. ("Kimberly") filed this suit to challenge an administrative law judge's finding that she was not disabled under the Social Security Act and thus ineligible for benefits. The parties have consented to final disposition of this case by a U.S. magistrate judge. (Doc. 11.) Because the ALJ's decision was based on substantial evidence, the Court affirms.

## LEGAL STANDARD

### I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin,* 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, while the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJs need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Kimberly

Kimberly was born in 1974, (R. at 195[1]), and was awarded her high-school equivalency in May 1994, (R. at 212). She has worked as a cashier in both a grocery and merchandise store and as a housekeeper at a nursing home. (R. at 213.) On a function report that Kimberly completed as part of her application process, she stated that she suffers from bipolar disorder, borderline personality disorder, PTSD, anxiety, panic attacks, and schizoaffective disorder. (R. at 291). She claimed that her paranoia, anxiety, and panic attacks make it difficult to concentrate on work-related tasks. (R. at 291.) When asked about her daily activities, Kimberly indicated that she takes care of her cat, washes dishes, surfs the internet, and talks to her sister and friends. (R. at 292.) At the hearing before the ALJ, Kimberly's counsel reiterated that these conditions render her unable to work. (R. at 59.)

### II.    Procedural History

Kimberly applied for supplemental security income with the Social Security Administration in February 2022. (R. at 20.) Her application was initially denied in June 2023 and denied upon reconsideration the following January. (R. at 20.) She then requested a hearing before an ALJ, which took place in August 2024. (R. at 52). Present at the hearing were Kimberly, her attorney, and a vocational expert. (R. at 52.)

---

[1] "R." refers to the Certified Administrative Record filed on November 10, 2025. (Doc. 8.) The page numbers cited in this Order refer to the black page numbers at the bottom right of each page of the transcript rather than the green page numbers generated automatically by CM/ECF at the top right.

5

After the hearing, the ALJ issued a written opinion concluding that Kimberly was not disabled and therefore not entitled to benefits. (R. at 47.) In response, Kimberly sought review of the ALJ's decision with the Appeals Council, but her request was denied. (R. at 4.) After receiving an extension of time to file a civil action, (R. at 2), Kimberly filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1). She filed her brief four months later, (Doc. 12), the Commissioner responded, (Doc. 16), and Kimberly replied, (Doc. 17).

## III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Kimberly was disabled. At step one, he determined that Kimberly has not engaged "in substantial gainful activity" since February 2012—the date Kimberly alleged that she became disabled. (R. at 22.) At step two, the ALJ found that Kimberly had the following severe impairments:

- schizoaffective disorder, bipolar type;
- depression;
- anxiety;
- borderline personality disorder;
- PTSD;
- fibromyalgia;
- arthritis of the joints;
- psoriatic arthritis;
- obesity;
- Ehlers Danlos Syndrome; and

6

- degenerative disc disease;

(R. at 22.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 25–32.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Kimberly] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes, or scaffold and no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; no more than frequent reaching, handling and fingering bilaterally; the ability to sit for 10 minutes of every hour; and no concentrated exposure to hazards such as unprotected heights and moving mechanical machinery. [Kimberly] is limited to performance of simple work tasks in a work setting that involves no more than occasional changes in work process or procedures and a work setting without production pace or hourly quota, although daily quotas and variable pacing is allowed. [Kimberly] is limited to a work setting where no interactions with the general public or coworkers are necessary to perform work tasks, but occasional incidental contact with the general public or coworkers is allowed, as well as no more than occasional interaction with supervisors. Even with these limitations, [Kimberly] is expected to be off task 5% of the workday and absent one day every two months.

(R. at 32.) At step four, the ALJ found that Kimberly has no past relevant work. (R. at 46.) Finally, at step five, the ALJ concluded that—given Kimberly's age, education, work experience, and RFC—there are a significant number of jobs in the national economy that she could perform. (R. at 46.) Examples of those jobs included collator operator, mail clerk, and office helper. (R. at 46.) Based on the ALJ's conclusion at step five, he determined that Kimberly is not disabled. (R. at 47.)

## DISCUSSION

Kimberly makes two arguments. First, she argues that the ALJ's off-task limitation was not grounded in any medical opinion. But the law does not require ALJs to ground every aspect of their RFC in a particular medical opinion. And even

7

if it did, Kimberly does not show that the ALJ's failure to do so here was prejudicial. Second, she argues that the ALJ erred by partially rejecting the opinion of a registered nurse's opinion. The Court agrees that the ALJ erred, but disagrees that the error warrants remand.

## I.    The ALJ's Off-Task Limitation

In formulating Kimberly's RFC, the ALJ included a limitation that allowed her to "be off task 5% of the workday and absent one day every two months." (R. at 32.) The ALJ based this limitation on his observation that Kimberly—"despite the significant benefits of treatment"—is "prone to flare-ups or exacerbations of her impairments at times." (R. at 45.) Kimberly takes issue with this finding because it was based on the ALJ's lay interpretation of the evidence rather than "any medical opinion." (Pl. Br. 10.[2]) The Commissioner responds, among other things, that the ALJ—not a doctor—is ultimately responsible for the RFC, that it was Kimberly's burden to prove an off-task limitation, and that Kimberly has not identified any evidence to cast doubt on the ALJ's finding. (Comm'r Br. 5–9.)

Kimberly relies on two cases to support her argument, so the Court begins there. In the first, *Krieger v. Colvin*, the court remanded because the ALJ's opinion suffered from an "evidentiary deficit": the ALJ rejected all five medical opinions and instead based his RFC on "sparse" evidence that was "selectively" chosen. No. 1:14-cv-1309, 2016 WL 406330, at *3–5 (C.D. Ill. Feb. 2, 2016). In the second, *Garner v. Berryhill*, the court remanded because the RFC was rife with contradictions: the ALJ

---

[2] "Pl. Br." refers to Kimberly's opening brief, filed December 10, 2025. (Doc. 12.)

8

allowed the claimant unlimited one-minute breaks *and* restricted her off-task time to five percent of the workday. No. 1:18-cv-211, 2019 WL 1324605, at *9 (N.D. Ind. Mar. 22, 2019). "Such a contradictory" RFC, the Court reasoned, infected the ALJ's hypotheticals, undermined the vocational expert's testimony, and rendered the ALJ's step-five conclusion bereft of substantial evidence. *Id.*

Kimberly urges the Court to follow *Krieger* and *Garner*, (Pl. Br. 11), but this case is different. It is different from *Garner* because Kimberly does not identify—nor does the Court find—any internal contradictions in the RFC assessment. This makes sense: Because the five-percent imitation was the only limitation in Kimberly's RFC related to breaks, there were no other limitations to contradict it. Likewise, this case is different from *Krieger* because, unlike the ALJ there, the ALJ here did not categorically reject every medical opinion in the record. Kimberly acknowledges this point, (Pl. Br. 10), but argues that *Krieger* applies because the ALJ here created a similar "evidentiary gap" to the one in that case. She says that "the evidentiary deficit occurs because there is no medical opinion for the ALJ to consider on the subjects of time off task and absenteeism." (Pl. Br. 10.) Yet Kimberly also argues that the ALJ based the five-percent limitation on "his own interpretation of the medical evidence." (Pl. Br. 11.) In doing so, Kimberly implicitly concedes that the five-percent limitation was based on *some* evidence; her core objection is that the ALJ did not rely on a doctor to *translate* that evidence into an off-task limitation.

The question thus becomes whether the ALJ was required to rely on a doctor to ascribe Kimberly the five-percent off task limitation. The answer is no. As the

Commissioner observes, "a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." (Comm'r Br. 5 (quoting *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)).) And the ALJ's responsibility to craft an RFC necessarily entails the responsibility to decide which limitations are properly within it. True, ALJs must "include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). But that is not the same thing as asking ALJs to ground each limitation in the RFC to a doctor's suggestion. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (explaining that an "ALJ is not required to rely entirely on a particular physician's opinion"). Accordingly, the ALJ's conclusion that Kimberly could be off-task five percent of each workday is not error simply because the ALJ did not rely on a doctor in reaching it.

Even assuming the ALJ's five-percent limitation was error, Kimberly fails to demonstrate prejudice. She observes that the vocational expert testified that a person who was off task 10% of the workday—rather than 5%—would be unemployable. If the ALJ had doubled Kimberly's off-task time, she would have been disabled. But the Commissioner correctly exposes the flaw in this argument: it relies on speculation, not evidence. Kimberly's logic—that, hypothetically, additional limitations would have prevented her from working—would transform every error into a prejudicial one. But Kimberly must do more than speculate; she must point to evidence that the ALJ ignored or misinterpreted in arriving at the off-task limitation. *See Rogers v. Colvin*, 37 F. Supp. 3d 987, 1000 (N.D. Ill. 2014) (refusing to remand when claimant "failed to present evidence" of how his limitations "impeded his ability to work").

Kimberly does not do so. (*See* Pl. Br. 10–12.) What is more, even accepting Kimberly's argument that the ALJ's off-task limitation was not "evidence-based," (Pl. Reply 3), that error made it *more likely* that Kimberly would be found disabled. If the ALJ did not include the off-task limitation at all, Kimberly's RFC would have been less restrictive, and more work would have been available to her. Accordingly, the ALJ's off-task limitation does not warrant remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (error is harmless where the ALJ would reach the "same result").

## II.     The ALJ's Assessment of APRN Paul's Opinion

Kimberly next argues that the ALJ had no basis for partially rejecting the opinion of Kristen Paul, a registered nurse. (Pl. Br. 15.) In particular, Kimberly suggests that the ALJ ignored Ms. Paul's statements about Kimberly's agoraphobia. (Pl. Br. 16.) The Commissioner responds that the ALJ was not required to consider every statement in the letter, that Paul's opinion was merely a recitation of Kimberly's subjective complaints, and that the state-agency opinions adequately addressed her agoraphobia. (Comm'r Br. 12–14.)

The medical opinion in question is a letter sent by Paul to Kimberly's lawyer on September 1, 2023. (R. at 1759.) Among other things, Paul explained Kimberly's diagnoses and concluded that "she is not able to maintain any employment." (R. at 1759.) Paul also stated that Kimberly's agoraphobia causes her "significant amounts of distress when outside of her home." (R. at 1759.) Kimberly therefore "keeps her social circle very small and only goes to very few places as a result." (R. at 1750.) The ALJ recounted the contents of the letter and found Paul's opinion "partially

11

persuasive." (R. at 43.) The ALJ cast aside Paul's conclusion that Kimberly could not work because it constituted an "issue[] reserved to the Commissioner." (R. at 43.) Even if the ALJ was required to consider these statements, he explained, Paul did not submit any copies of her treatment records. (R. at 43.) And in any event, "the evidence . . . from other treating providers does not substantiate" Kimberly's inability to work." (R. at 43.) The ALJ did, however, credit Paul's "statements about the claimant's low stress tolerance and significant issues with social interaction" as consistent with the record and therefore persuasive. (R. at 43.)

ALJs must "evaluate every medical opinion" they receive. 20 C.F.R. § 404.1257(c). Of course, they need not accept those opinions without question. See id. § 404.1527(d). But when they reject an opinion, they "must provide enough analysis to allow a reviewing court some idea of why" they did so. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018). Although "ALJs need not comment on every line of a physician's treatment notes," *Kolar v. Berryhill*, 695 F. App'x 161, 161–62 (7th Cir. 2017), they must, at a minimum, "respond to the physician's principal conclusions," *id.* at 162. For claims filed after March 2017 (like Kimberly's), ALJs must assess medical opinions in light of several factors. See 20 C.F.R. § 404.1520c. Those factors include: (1) supportability, meaning the objective medical evidence on which the opinion is grounded; (2) consistency with other evidence; (3) the physician's relationship to the claimant; and (4) the physician's bona fides. See id. § 404.1520c(c)(1)–(5). Unsurprisingly, the supportability and consistency of an opinion are the most important. See id. § 404.1520c(a).

12

Kimberly faults the ALJ for failing to specifically address Paul's statements about her agoraphobia. In particular, she argues that the ALJ did not consider whether other evidence was consistent with Paul's assertion that Kimberly has immense difficulty leaving her home. The Court agrees, in part. Of course, Paul did not attach any treatment notes to her letter, so the ALJ could not address whether the opinion was grounded in objective medical evidence. But as Kimberly recognizes, the ALJ did not explicitly respond to Paul's "principal conclusion[]" that Kimberly's agoraphobia makes it difficult to leave her home. *Kolar*, 695 F. App'x at 162. To the ALJ's credit, he did address the consistency of Paul's "statements about [Kimberly's] low stress tolerance and significant issues with social interaction," concluding that they were "consistent with the evidence of record" and therefore "of some persuasive value." (R. at 43.) It is unclear, however, whether or to what degree Kimberly's ability to leave the home is encompassed by stress tolerance and social interaction.

The Commissioner argues that the ALJ did not err because Paul's opinion about Kimberly's agoraphobia was based on self-reports. But as Kimberly correctly observes, "the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). Because the ALJ's opinion did not discredit Paul's statements on the ground that they were based on Kimberly's own reports, the Commissioner cannot invoke it in the ALJ's defense. The Commissioner also argues that an ALJ need not "specifically evaluat[e] each and every statement" in Paul's opinion. (Comm'r Br. 12.) Fair enough. But as discussed, the ALJ must, at a minimum, respond to their

13

"principal conclusions." *Kolar*, 695 F. App'x at 162. In discussing Paul's opinion, the ALJ did not explicitly respond to Paul's conclusion that Kimberly experiences distress when she leaves the home.

That said, the Court finds this error harmless for three reasons. First, the ALJ elsewhere addressed Kimberly's difficulty leaving the home. In concluding his RFC analysis, the ALJ observed that, "other than attending medical visits, the claimant struggles to leave her home and actively avoids interaction with anyone other than her sister, due to her fear and paranoia and other symptoms." (R. at 44; *see also* R. at 28 (recounting that Kimberly (1) "could not leave the house without feeling anxious"; (2) "went outside when necessary but she felt safer at home"; (3) "avoided going into a store alone if she could help it"; and (4) "had never lost a job because of problems getting along with others").) The ALJ was thus plainly aware of Kimberly's agoraphobia symptoms. But because she was able to leave the house to attend doctors' visits and for other purposes, the ALJ concluded that she was able to leave the house to go to work. The fact that this conclusion did not appear in the ALJ's discussion of Paul's opinion is of no moment. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (permitting ALJs to supply a rationale for one conclusion in a separate portion of their opinion).

Second, the state-agency opinions—which the ALJ found persuasive—specifically considered Kimberly's agoraphobia. They recognized, for instance, that Kimberly was "fearful and avoidant of others outside her home," but that she had "been trying to get out and about." (R. at 95; *see also* R. at 112 (same).) And in

14

discussing these opinions, the ALJ found them "overall persuasive," agreeing with the conclusion that Kimberly "is limited to but capable of performing simple work tasks" with additional limitations. (R. at 44.) In fact, the ALJ imposed additional restrictions—above and beyond either of the state-agency psychologists—based on Kimberly's "difficulties with social interaction." (R. at 44.) All told, the state-agency psychologists considered Kimberly's agoraphobia; by incorporating those opinions into his RFC analysis, the ALJ accounted for that condition too.

Third, as discussed, the ALJ himself did not mention the fact that Kimberly's agoraphobia was based on self-reports. So the Commissioner cannot now use it as a ground to argue that the ALJ did not commit error. *See Kastner*, 697 F.3d at 648. Yet the absence of medical evidence is material in determining whether the result would change on remand. Indeed, as the Commissioner notes, an ALJ is entitled to reject an opinion that rests "entirely on the claimant's subjective complaints." (Comm'r Br. 12 (quoting *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).) And the Social Security Act expressly forbids ALJs from finding a claimant disabled based on their subjective "statement[s] as to pain or other symptoms." 42 U.S.C. § 423(d)(5)(A). Kimberly was therefore required to adduce evidence of her agoraphobia symptoms other than her own statements, but she failed to do so. A remand would not change that flaw in her case.

Kimberly argues that the ALJ's failure to more fully discuss Paul's opinion was prejudicial for two reasons, but neither is persuasive. First, she argues that it deprives the Court of the ability to conduct meaningful appellate review. (Pl. Br. 17.)

15

But for the reasons discussed, the Court has "some idea of why" the ALJ did not find Kimberly disabled based on her agoraphobia. *Spicher*, 898 F.3d at 758. She also argues that the ALJ's error was prejudicial because—had he found her unable to leave the home—she would not have been found unable to work and therefore disabled. (Pl. Br. 18.) But the ALJ's opinion, read as a whole, demonstrates why he did not ascribe that limitation. *See Brandi B. v. Kijakazi*, No. 21-cv-4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022) ("A reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review."). Because a reasonable mind would accept the ALJ's discussion of the evidence as adequate to support his conclusion, this Court's inquiry is at an end. *See Richardson*, 402 U.S. at 401 (defining "substantial evidence").

In short, Kimberly asks the Court to remand this case so that the ALJ can more fully address a one-paragraph letter—without accompanying treatment notes—that primarily recounted Kimberly's own reports. But the Court is confident that directing the ALJ to do so would not change the result. *See Thomas H. v. Kijakazi*, No. 3:22-cv-50331, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023) (explaining that remand is inappropriate if the Court is confident that the result would be the same).

**CONCLUSION**

The ALJ's decision is therefore AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered*.

Entered this 10th day of June 2026.

16

17

s/ Ronald L. Hanna
_____

Ronald L. Hanna
United States Magistrate Judge

17